

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

JEFF STEWART,

    PLAINTIFF,

v.                                                                  CASE NO. CV-03-J-2999-J

AMERICAN ZURICH INSURANCE
COMPANY, et al.,

    DEFENDANTS.

## MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment (doc. 15), evidence, and brief in support of said motion (docs. 15 and 16), the plaintiff's brief and evidentiary submissions in opposition to said motion (doc. 18) and the defendant's reply to the plaintiff's opposition (doc. 20). The court having considered said pleadings, briefs and evidentiary submissions, finds as follows:

The plaintiff was an independent contract truck driver for a company which has a disability policy with defendant.[1] He was injured and is disabled from that injury. No issue regarding the existence of coverage or his ability to work is before the court. Pursuant to the policy, defendant paid plaintiff's health care bills and began paying him temporary total disability in December, 2001. Goldberg depo. at 63-64. It paid

---

[1] The plaintiff is mistakenly identified as "Barbara Mahand" in the Complaint. Complaint, ¶ 1. The court assumes that is a result of a misprint. For purposes of this opinion, the court has considered Jeff Stewart as the proper plaintiff.



the full 104 week period provided by the policy. Plaintiff depo. at 130-131; exhibit 5 to plaintiff depo., at 39; Goldberg depo. at 59-60. However, upon "team manager" Janet Warley going to work for the defendant, the payments to plaintiff were reviewed in late 2002 and his payments were cut from $500 a week to $150.01 per week in March, 2003. *See* Exhibits 12 and 14 to plaintiff depo.; Goldberg depo. at 81, 141-42; 161-62, 165; Warley depo. at 14-15.

Upon Warley beginning her employment with defendant, she began randomly reviewing all claims paying the maximum benefit of $500. Warley depo. at 48-49. Defendant states its original calculation was based on plaintiff's gross income for the year 2000, of $52,056, and that its policy actually requires payment based on "taxable income or wages, as calculated for Federal Income Tax purposes." Exhibit 5 to plaintiff depo, at 33; Warley depo. at 50, 58-59; Goldberg depo. at 74-75, 77; 130-31. According to defendant, plaintiff's taxable income for 2000 was $0.00, and thus he is being paid the lowest benefit, according to the policy. Plaintiff asserts defendant is ignoring income he earned as in independent truck driver.

Defendant did not try to recoup the alleged overpayment. Plaintiff did indeed claim his taxable income to be $0.00 for the year 2000. However, he asserts that his wages were $52,056. Defendant states it only looks at line 39 of his Federal return, which is $0.00. Goldberg depo. at 161-162; Warley depo. at 71; Exhibit 3 to plaintiff

2

depo.). However, his profit from business was $52,056. Exhibit 3A to plaintiff depo. The plaintiff never saw the policy at issue prior to receiving his first benefit check. Plaintiff depo. at 112. No one told him how disability benefits would be calculated prior to then either. *Id.*

Plaintiff also claims that defendant will not pay long term disability benefits to which he is entitled under the policy. Defendant states its policy bases entitlement to such benefits on receipt of Social Security benefits. Exhibit 5 to plaintiff depo., at 34. Plaintiff has applied for Social Security benefits, his claim has been denied, and he is now appealing that denial. Plaintiff depo. at 135-137. Therefore, defendant states plaintiff is not now eligible for these benefits. *See* Goldberg depo. at 133-136. Plaintiff asserts defendant has failed to properly investigate this claim.

Based on the above facts, the plaintiff sues for fraud, conversion, bad faith, breach of contract, and suppression. The court finds that the plaintiff has abandoned his conversion claim. *See Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1284 (11th Cir.2003); *see also Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir.2001).

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of genuine issues of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e). In meeting this burden the nonmoving party must demonstrate that there is a "genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); Fed.R.Civ.P. 56(c).

"A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AL Transport*, 229 F.3d 1012, 1023 (11th Cir.2000), quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir.1991).

### III. Legal Analysis

*Breach of Contract*

In the facts before this court, the question of whether the insurance contract at issue was breached turns on the issue of interpretation. According to the plaintiff, "taxable income or wages, as calculated for Federal Income Tax purposes" means "taxable income" or "wages." The plaintiff argues that while his taxable income, as shown on line 39 of his Federal Income Tax return was zero, he had $52,056 in wages. Thus, plaintiff argues that his weekly benefit should be calculated based on "wages."[2] The defendant argues it only looks at line 39 of the Federal Income Tax return.

---

[2]The plaintiff received $500.00 per week based on this calculation of his wages.

Because the plaintiff reported his taxable income as $0.00, he is entitled to the lowest benefit under the policy.³

Additionally, the parties dispute whether the plaintiff must first receive Social Security benefits to obtain continuous total disability benefits under the policy. The policy states:

> **CONTINUOUS TOTAL DISABILITY BENEFIT**
>
> We will pay the Weekly Benefit described below to the Covered Person when We receive proof, acceptable to Us, that:
>
> 1. the Covered Person is Continuously Totally Disabled;
>
> 2. the Covered Person is under the care and attendance of a Physician for such Continuous Total Disability; and
>
> 3. such Continuous Total Disability:
>
>> a. resulted solely and directly from an Injury, while insured under the Policy;
>>
>> b. began before the Covered Person attained age 70;
>>
>> c. began within the Disability Commencement Period shown in the Schedule of Benefits:
>>
>> d. continued, without interruption for at least the Waiting Period shown in the Schedule of Benefits;
>>
>> e. is reasonably expected to continue without interruption until the Covered Person dies and;
>>
>> f. was a result of an Injury sustained while performing the Duties of the Covered Person's Occupation.

---

³The plaintiff received $150.01 per week based on this calculation of his taxable income. The court notes that, under defendant's interpretation, two individuals with equivalent income could receive very different benefits, depending on such arbitrary factors as mortgage interest rate, number of dependants, charitable donations, and the like.

6

> 4. the Covered Person has been granted a Social Security Disability Award for such Continuous Total Disability;

Defendant exhibit 1 at bates stamp 00034.

Having reviewed the policy, the court finds both interpretations of the policy language are reasonable. The issue whether a contract is ambiguous or unambiguous is a question of law for a court to decide. *McDonald v. U.S. Die Casting & Dev. Co.*, 585 So.2d 853, 855 (Ala.1991).

> "The test to be applied by [a] court in determining whether there is ambiguity is not what the insurer intended its words to mean, but what a reasonably prudent person applying for insurance would have understood them to mean." Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 21:14, pp. 21-23 (3d ed.1997); *see also*, *Western World Ins. Co. v. City of Tuscumbia,* 612 So.2d 1159, 1161 (Ala.1992) (same); *St. Paul Fire & Marine Ins. Co. v. Edge Memorial Hosp.,* 584 So.2d 1316, 1322 (Ala.1991) (stating that language in an insurance policy should be given the same meaning that an ordinary person, not a lawyer, would reasonably ascribe to the language).

*State Farm Fire & Cas. Co. v. Slade,* 747 So.2d 293, 308 (Ala.1999). The terms of an insurance policy are ambiguous only if the policy's provisions are reasonably susceptible to two or more constructions or there is reasonable doubt or confusion as to their meaning. *Id., quoting United Services Auto. Ass'n v. Smith,* 57 Ala.App. 506, 329 So.2d 562 (Ala.Civ.App.1976).

Under Alabama law, ambiguities are to be construed in favor of the insured and in favor of coverage. *Liberty Mut. Ins. Co. v. Wheelwright Trucking Co., Inc.* 851 So.2d 466, 497 (Ala.2002), *citing Slade,* 747 So.2d at 309; *St. Paul Mercury Ins. v. Chilton-Shelby Mental Health Ctr.,* 595 So.2d 1375, 1377 (Ala.1992); *Sullivan v. State Farm Mut. Auto. Ins. Co.,* 513 So.2d 992, 994 (Ala.1987); *Liberty Mut. Ins. Co. v. Wheelwright Trucking Co., Inc.* 851 So.2d 466, 497 (Ala.2002). Alabama law provides clear guidelines for a court interpreting language in an insurance policy.

> [I]nsurance contracts, like other contracts, are construed so as to give effect to the intention of the parties, and, to determine this intent, a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions." *Celtic Life Ins. Co. v. McLendon,* 814 So.2d 222, 224 (Ala.2001). In interpreting the language of an insurance policy, the court must give the words used in the policy their customary and normal meaning, and the court must construe the policy in a manner consistent with the interpretation that a person of ordinary intelligence would place on the policy's language. *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.,* 817 So.2d 687, 692 (Ala.2001); *Boone v. Safeway Ins. Co. of Ala., Inc.,* 690 So.2d 404, 406 (Ala.Civ.App.1997); *Sullivan v. State Farm Mut. Auto. Ins. Co.,* 513 So.2d 992, 994 (Ala.1987). If, under this standard, the words used are reasonably certain in their meaning, they are not ambiguous as a matter of law, and the rule of construction favoring the insured does not apply. *Bituminous Cas. Corp. v. Harris,* 372 So.2d 342, 344 (Ala.Civ.App.1979). However, "[w]here there is any doubt or confusion as to the meaning of a term in an insurance policy, the general rule of contracts applies to the policy, so that the contract is interpreted against the party which drafted the contract." *Boone,* 690 So.2d at 406. "Any language of an insurance contract that is susceptible to more than one interpretation must be construed in favor of coverage for the insured." *Id.*

8

> ... [C]ourts may not rewrite policy language so as to provide coverage that was not intended by the parties. *Am. Nat'l Prop. & Cas. Co. v. Blocker,* 165 F.Supp.2d 1288, 1295 (S.D.Ala.2001); *Altiere v. Blue Cross & Blue Shield of Ala.,* 551 So.2d 290, 292 (Ala.1989). But "[a] policy must be construed fairly, must effectuate its purpose, and must reflect common sense so as not to bring about an absurd result." *Boone,* 690 So.2d at 406.

*In re HealthSouth Corp.,* 308 F.Supp.2d 1253, 1268 -1269 (N.D.Ala.2004).

Having considered the foregoing rules of construction, the court finds that the insurance policy at issue is ambiguous as to the proper earnings figure to be used in calculation of temporary total disability benefits. Therefore, the proper amount of temporary disability benefits due the plaintiff is a question of fact. Where factual issues arise, the resolution of the ambiguity is a task for the jury. *McDonald v. U.S. Die Casting & Dev. Co.,* 585 So.2d 853 (Ala.1991). The court also finds the above language regarding continuous total disability benefits ambiguous to the extent that the four numbered paragraphs do not clearly state they are cumulative requirements, as the defendant argues. Rather, the language can reasonably be read to require all four paragraphs, or paragraphs one through three, OR paragraph four.

Because the court finds that a genuine issue of material facts remains in the case, the defendant's motion for summary judgment on this claim is due to be denied.

*Fraud*

The elements of a fraud claim are: "(1) a misrepresentation of a material fact, (2) made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) that was reasonably relied on by the plaintiff under the circumstances, and (4) that caused damage as a proximate consequence." *BSI Rentals, Inc. v. Wendt,* 2004 WL 817141, *4 (Ala.Civ.App.2004); *citing Brushwitz v. Ezell,* 757 So.2d 423, 429 (Ala.2000).

Thus, the plaintiff must show reasonable reliance on an alleged misrepresentation. *Waddell & Reed, Inc. v. United Investors Life Ins. Co.,* 2003 WL 21512990, – So.2d – , – (Ala.2003). In other words, the plaintiff must show a misrepresentation which actually caused him to take some action. *See Liberty Nat'l Life Ins. Co. v. Allen,* 699 So.2d 138, 141 (Ala.1997). The burden is on the party alleging fraud to prove by substantial evidence the element of reliance. *Allstate Ins. Co. v. Eskridge,* 823 So.2d 1254, 1264 (Ala.2001). "If the plaintiff would not have acted on the transaction in question but for the misrepresentation, such misrepresentation was an actual cause of his loss. If he would have adopted the same course irrespective of the misrepresentation and would have sustained the same degree of damages anyway, it can not be said that the misrepresentation caused any damage, and the defendant will not be liable therefor." *Shades Ridge Holding Co. v. Cobbs, Allen & Hall Mortgage Co.,* 390 So.2d 601, 611 (Ala.1980). *See also Fisher v.*

*Comer Plantation, Inc.*, 772 So.2d 455, 466 (Ala.2000) ("When deciding whether the plaintiff relied on a misrepresentation, the fact-finder must consider whether the plaintiff would have chosen a different course but for the suppression of a material fact.").

Because the plaintiff never requested to see or saw a copy of the insurance policy until after he began receiving disability benefits, he could not have relied on any provision on that policy. Assuming instead that the defendant's payments to the plaintiff of $500.00 per week constituted a representation by the defendant, on which the plaintiff relied, the plaintiff has failed to allege any action he took based upon that representation. He has failed to establish that he acted in reliance on the alleged misrepresentation.[4] Because the plaintiff has failed to present any genuine issue of material fact on his claim for fraud, the court shall grant the defendant's motion for summary judgment on this count of the complaint.

***Suppression***

To establish a claim of fraudulent suppression, the plaintiff must produce substantial evidence showing: (1) that the defendant had a duty to disclose an existing material fact; (2) that the defendant suppressed that existing material fact; (3) that the defendant had actual knowledge of the fact; (4) that the defendant's suppression of the

---

[4]The plaintiff claims only that he was damaged by the reduction in payments. However, he has failed to allege that he took any particular action based on his expectation of the higher payments

11

fact induced the plaintiff to act or to refrain from acting; and (5) that the plaintiff suffered actual damage as a proximate result. *University Federal Credit Union v. Grayson,* 2003 WL 22221231, *5 (Ala.2003), *citing State Farm Fire & Cas. Co. v. Slade,* 747 So.2d at 323-24. The plaintiff here does not allege any fact put forth by the defendant on which he relied. In this count of the complaint, the plaintiff claims that the defendant suppressed it would reduce his benefits. The plaintiff asserts he was induced to purchase the policy in question by the defendant's suppression.

The plaintiff has failed to show that, but for the defendant's suppression, he would not have purchased the policy. The plaintiff has put forth no evidence that the defendant knew at the time he purchased the policy it would later reduce his benefits. Because the plaintiff never saw the policy nor talked with any employee of the defendant about how benefits would be calculated, until after he was already receiving benefits, the court finds nothing in the policy could have induced the plaintiff to take any action. Therefore, the court is of the opinion that the defendant is entitled to summary judgment in its favor on this count of the complaint.

### *Bad Faith Failure to Pay*

To establish a claim for bad faith, the plaintiff must establish (1) an insurance contract between the parties and a breach thereof by the defendant; (2) and intentional refusal to pay the insured's claim; (c) the absence of any reasonably legitimate or

arguable reason for that refusal (the absence of a debatable reason); (d) the insurer's actual knowledge of the absence of any legitimate of arguable reason." *Nobles v. Rural Community Insurance Services,* 303 F.Supp.2d 1292, 1304 (M.D.Ala.2004); citing *National Sec. Fire & Causulty Co. v. Bowen*, 417 So.2d 179, 183 (Ala.1982).

The Alabama Supreme Court has divided bad faith claims into two categories, those being "normal" bad-faith claims and "unusual" or "extraordinary" bad faith claims. *See Nobles v. Rural Community Insurance Services*, 303 F.Supp.2d 1292, 1305 (M.D.Ala.2004). In "normal" claims, a plaintiff must show that he or she is entitled to recover on the contract claim as a matter of law. If there is a genuine issue with regard to the insurer legitimately denied the plaintiff's claim, then summary judgment on the bad faith claim is due to be granted. *See id., citing National Sav. LifeIns. Co. v. Dutton*, 419 So.2d , 1357, 1362 (Ala.1982); *S & W Properties v. American Motorists Ins. Co.*, 668 So.2d 529, 533 (Ala.1995). However, the Alabama Supreme Court is more lenient with "unusual" or "extraordinary" bad-faith claims, finding that the above standard does not apply in certain cases. *See National Ins. Ass'n v. Sockwell*, 829 So.2d 111, 128 (Ala.2002).

> Unusual bad faith claims, however, have been limited to four types of claims: "those instances in which the plaintiff produced substantial evidence showing that the insurer (1) intentionally or recklessly failed to investigate the plaintiff's claim; (2) intentionally or recklessly failed to properly subject the plaintiff's claim to a cognitive evaluation or review;

13

(3) created its own debatable reason for denying the plaintiff's claims; or (4) relied on an ambiguous portion of the policy as a lawful basis to deny the plaintiff's claim.

*Id.* at 129-130.

Based on the foregoing, the court finds that the plaintiff has produced substantial evidence that the defendant is relying on an ambiguous portion of the insurance policy to deny the plaintiff's claims for benefits. As such, the court finds summary judgment on the bad faith failure to pay claim to be inappropriate.

### III. Conclusion

The court having considered the foregoing, the court is of the opinion the defendant's motion for summary judgment is due to be granted in part and denied in part. By separate Order, the court shall **GRANT** the motion on the plaintiff's claims for fraud, suppression and conversion. The court shall **DENY** the motion on the plaintiff's claims for breach of contract and bad faith failure to pay.

**DONE** and **ORDERED** this the 3 day of August, 2004.

_____
UNITED STATES DISTRICT JUDGE
INGE P. JOHNSON